1   René P. Voss (CA Bar No. 255758)
    Natural Resources Law
2   15 Alderney Road
    San Anselmo, CA  94960
3   (415) 446-9027 │ renepvoss@gmail.com
4   LEAD COUNSEL

5   Oliver J. H. Stiefel (OR Bar No. 135436)
    (503) 227-2212 │ oliver@crag.org
6   Kelly Chang (OR Bar No. 223727)
7   (503) 234-0788 │ kelly@crag.org
    Crag Law Center
8   3141 E Burnside St,
    Portland, OR 97214
9   LEAD COUNSEL
10  *Pro Hac Vice*

11  *Attorneys for Plaintiffs*

12

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

16

17  KLAMATH FOREST ALLIANCE, EARTH          No.  3:23-cv-03601-RFL
    ISLAND INSTITUTE, SEQUOIA
18  FORESTKEEPER, CONSERVATION              **SECOND DECLARATION OF**
    CONGRESS, AMERICAN WHITEWATER,          **RENÉ VOSS**
19  ENVIRONMENTAL PROTECTION
    INFORMATION CENTER AND CENTER
20  FOR BIOLOGICAL DIVERSITY,

21              Plaintiffs,

22         v.

23
    UNITED STATES FOREST SERVICE,
24
                Defendant.
25

26

27

28

1      I, René Voss, declare as follows.

2          1.      I am over 21 years old and have personal knowledge of the matters set forth

3   below.

4          2.      I am counsel of record to all Plaintiffs in this matter. I offer this declaration to

5   provide, for the Court's convenience, selected pages from the Forest Service NEPA Handbook

6   1909.15 Ch. 10, § 14 (wo_1909.15_10-Amend 2023-1.docx), with the relevant passage on page

7   34 of 50 highlighted in yellow, which is available at https://www.fs.usda.gov/cgi-

8   bin/Directives/get_dirs/fsh?1909.15 (lasted visited March 13, 2024).

9

10         I declare, under penalty of perjury, that the foregoing is true and correct to the best of my

11  knowledge and recollection.

12         Executed on March 14th, 2024 in San Anselmo, California.

13

14

15         _____

16                 René Voss

17

18

19

20

21

22

23

24

25

26

27

28

2ND VOSS DECLARATION - EXHIBIT 1

# Forest Service Handbook
## Service Wide (WO)
## Washington, DC

**Forest Service Handbook 1909.15 – National Environmental Policy Act Handbook**

**Chapter 10 – Environmental Analysis**

**Amendment Number:** 1909.15-2023-1

**Effective date:**  March 3, 2023

**Duration:** This amendment is effective until superseded or removed.

**Previous Directive:**  1909.15-2012-3 to chapter 10, June 25, 2012, 47 pages

**Approved by:**  Jacqueline Emanuel, Associate Deputy Chief, NFS

**Date approved:**  February 23, 2023

**Responsible Staff:** Ecosystem Management Coordination (EMC)

**Explanation of changes:** Following is an explanation of the changes throughout the directive by section.

**Chapter 10:** Updates to 508 compliant format.

**Section 11.44:** Establishes a new section to incorporate provisions on 36 CFR 220.4(j), Determination of NEPA Adequacy (DNA).

## Table of Contents

**11 – Conduct Scoping** ...................................................................................................................**4**

    **11.1 – Organize Scoping Effort** ..................................................................................................**7**

    **11.2 – Proposed Action, Purpose and Need, and Decision Framework** ..................................**7**

        **11.21 – Purpose and Need** ...................................................................................................**8**

        **11.22 – Decision Framework** ...............................................................................................**8**

        **11.23 – Review of Existing Decisions** ..................................................................................**8**

    **11.3 – Identify Responsible Official(s) and Agencies Involved** ...............................................**9**

        **11.31 – Lead and Cooperating Agencies** ...........................................................................**9**

            **11.31a – Lead Agency** ...................................................................................................**10**

            **11.31b – Cooperating With Other Agencies** ................................................................**12**

        **11.32 – Elimination of Duplication With State and Local Procedures** ......................................**13**

            **11.32a – Combining Documents to Eliminate Duplication** ...........................................**14**

        **11.33 – Federal Agencies With Legal Jurisdiction or Special Expertise** ...............................**14**

        **11.34 – Review of Other Agency Environmental Documents** ............................................**14**

        **11.35 – Referrals to Council on Environmental Quality** ....................................................**15**

        **11.36 – Review of Forest Service Legislative or Service-Wide Environmental Documents** .......**16**

    **11.4 – Determine if Existing Documents Address Proposed Action** .........................................**16**

        **11.41 – Tiering** .....................................................................................................................**16**

        **11.42 – Adoption** ................................................................................................................**17**

        **11.43 – Incorporation by Reference** ..................................................................................**18**

        **11.44 – Determination of NEPA Adequacy (DNA)** ............................................................**18**

    **11.5 – Look for Preliminary Issues and Identify Public Participation Needs** ..............................**19**

        **11.51 – Identify Preliminary Issues** ....................................................................................**19**

        **11.52 – Identify Public Participation Needs** .......................................................................**19**

    **11.6 – Determine If Proposal Can Be Categorically Excluded From Documentation in Environmental Impact Statement or Environmental Assessment** ...............................................**22**

    **11.7 – Inform Participants and the Public of Results of Scoping and the Progress of the Analysis** **24**

**12 – Use Interdisciplinary Analysis** .........................................................................................**24**

    **12.1 – Project Initiation** ...........................................................................................................**24**

    **12.2 – Interdisciplinary Team Selection** ...................................................................................**25**

        **12.21 – Team Leader** ..........................................................................................................**25**

        **12.22 – Other Team Members** ...........................................................................................**26**

        **12.23 – Selection of Interdisciplinary Analyst(s) in Lieu of a Team** ...................................**27**

        **12.24 – Responsibilities When Applicants and Contractors are Involved** ..........................**27**

    **12.3 – Develop a Framework for Analysis** ................................................................................**29**

    **12.4 – Identify Issues** ...............................................................................................................**30**

        **12.41 – Considering Issues in Preparation of Environmental Impact Statements** ..................**30**

        **12.42 – Considering Issues in Preparation of Environmental Assessments** ..........................**31**

    **12.5 – Measures** ......................................................................................................................**31**

    **12.6 – Documenting Public Involvement** .................................................................................**32**

        **12.61 – Expand Public Involvement as Appropriate** ..........................................................**32**

**13 – Collect and Interpret Data** ..............................................................................................**33**

**14 – Develop Alternatives** ..................................................................................**34**

**14.1 – Adaptive Management Strategy** ...............................................................**36**

**14.2 – No-Action Alternative** ............................................................................**38**

**14.3 – Alternative Documentation Options** .......................................................**39**

**14.4 – Alternatives Not Considered in Detail** ....................................................**39**

**15 – Estimate Effects of Each Alternative** ..............................................................**40**

**15.1 – Cumulative Effects** .................................................................................**42**

**15.2 – Bounding Effects** ....................................................................................**43**

**15.2a – Spatial Boundaries** ..........................................................................**43**

**15.2b – Temporal Boundaries** ......................................................................**43**

**15.3 – Cumulative Effects Framework** ..............................................................**45**

**16 – Evaluate Alternatives and Identify Preferred Alternative(s)** ..........................**45**

**17 – Determine Type of Environmental Document Needed** ....................................**46**

**17.1 – Other Planning and Preparation Requirements for Environmental Documents** ...............**47**

**17.1a – Consultation Requirements** .............................................................**47**

**18 – Correction, Supplementation, or Revision of Environmental Documents and Reconsideration of Decisions to Take Action** ..................................................................................**47**

**18.1 – Review and Documentation of New Information Received After Decision Has Been Made** ..................................................................................................**47**

**18.2 – Reconsideration of Decisions Based on an Environmental Impact Statement** ...................**48**

**18.3 – Reconsideration of Decisions Categorically Excluded From Environmental Documentation** ..................................................................................................**49**

**18.4 – Reconsideration of Decisions Based on Environmental Assessment and Finding of No Significant Impact** ...............................................................................**49**

**For the purposes of this section, "reasonably foreseeable" includes impacts which have catastrophic consequences, even if their probability of occurrence is low, provided that the analysis of the impacts is supported by credible scientific evidence, is not based on pure conjecture, and is within the rule of reason.**

(40 CFR 1502.22)

**14 – Develop Alternatives**

Under the CEQ regulations, the Agency is required to:

**Study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources as provided by section 102(2)(E) of the Act.**

(40 CFR 1501.2(c))

No specific number of alternatives is required or prescribed. Develop other reasonable alternatives fully and impartially. Ensure that the range of alternatives does not prematurely foreclose options that might protect, restore, and enhance the environment.

Reasonable alternatives to the proposed action should fulfill the purpose and need and address unresolved conflicts related to the proposed action. Be alert for alternatives suggested by participants in scoping and public involvement activities. Consider alternatives, even if outside the jurisdiction of the Agency.

Descriptions of the alternatives should include relevant mitigation measures that could reduce the impacts of the project, even if those measures are outside the jurisdiction of the Agency. Examples include; project design features to avoid or minimize impacts, forest plan requirements, Best Management Practices, and statutory and regulatory requirements related to Federal, State, and local laws and regulations.

As established in case law interpreting the NEPA, the phrase "all reasonable alternatives" has not been interpreted to require that an infinite or unreasonable number of alternatives be analyzed, but does require a range of reasonable alternatives be analyzed whether or not they are within Agency jurisdiction to implement (40 CFR 1502.14(c)). For further guidance, see questions 1, 2, and 3 of the "NEPA's 40 Most Asked Questions" and in section 65.12.

For EISs:

*The EIS shall document the examination of reasonable alternatives to the proposed action. An alternative should meet the purpose and need and address one or more significant issues related to the proposed action. Since an alternative may be developed to address more than one*

*significant issue, no specific number of alternatives is required or prescribed.*

(36 CFR 220.5(e))

Develop and consider alternatives that would reduce significant impacts.

(1) *The responsible official may modify the proposed action and alternative(s) under consideration prior to issuing a draft EIS. In such cases, the responsible official may consider the incremental changes as alternatives considered. The documentation of these incremental changes to a proposed action or alternatives shall be included or incorporated by reference in accord with 40 CFR 1502.21.*

(36 CFR 220.5(e))

The intent of the regulation is to encourage collaboration throughout the analysis and decision-making process. Ongoing collaboration may often result in modification of a proposed action or alternative(s), resulting in a better proposal and ultimately a better decision. Such changes may not necessarily require the development of a new alternative if they can be accommodated through modification of an existing alternative. Incremental modifications that occur as a result of collaboration should be clearly described and documented in the analysis record, so that interested parties have a clear understanding of the nature of and reasons for the incremental changes.

For EAs:

*The EA shall briefly describe the proposed action and alternative(s) that meet the need for action. No specific number of alternates is required or prescribed.*

*When there are no unresolved conflicts concerning alternative uses of available resources (NEPA, section 102(2)(E)), the EA need only analyze the proposed action and proceed without consideration of additional alternatives.*

(36 CFR 220.7(b)(2)(i))

Develop and consider alternatives that would resolve conflicts about the proposal. When scoping indicates an agreement about the proposed action, there is no need to develop additional alternatives. In this case, document that fact in the EA so the reader knows why other alternatives were not considered.

**14.1 – Exhibit 01 – Adaptive Management Strategy**



Not all actions lend themselves to an adaptive management strategy and this guidance should not be construed to require its use. The ability to accomplish necessary monitoring and to fully analyze the effects of the range of additional adaptive management actions needs to be carefully considered before using an adaptive management approach.

**14.2 – No-Action Alternative**
The no-action alternative provides a baseline for estimating the effects of other alternatives; therefore, include the effects of taking no-action in each environmental analysis.

A no action alternative is required in an EIS (40 CFR 1502.14(c)). There is no requirement to include a no action alternative in an EA. In an EA, the effects of a no-action alternative may be documented as follows:

> ***The EA may document consideration of a no-action alternative through the effects analysis by contrasting the impacts of the proposed action and any alternatives(s) with the current condition and expected future condition if the proposed action were not implemented.***

> (36 CFR 220.7(b)(2)(ii))

Two interpretations of no-action are possible. The first interpretation involves an action such as the amendment or revision of a land management plan where ongoing programs described within the existing plan continue, even as new plans are being developed. In these cases, the no-action alternative means no change from current management direction. Consequently, the responsible official would compare the projected impacts of alternative management schemes to those impacts projected for the existing plans or actions.

The second interpretation of no-action is that a proposed action or activity, such as a proposal to construct a road or authorize special uses of National Forest System lands, would not take place. The nature and scope of the proposed action will aid the responsible official in determining which interpretation is appropriate to the analysis.

Occasionally, to address an issue (sec. 12.4) an analysis could include both interpretations. For example, to update a range allotment plan, the no action alternative is no grazing, as specified in the Grazing Permit Administration Handbook (FSH 2209.13, sec. 92.31). Another alternative could be to continue under the current allotment plan management direction, if it meets the stated purpose and need. Current management could also be the proposed action if it is determined to be consistent with the land and resource management plan and has been shown to be effective in meeting resource objectives through monitoring over time.

For further guidance, see question 3 of "NEPA's 40 Most Asked Questions."

**14.3 – Alternative Documentation Options**

The proposed action and alternatives may be modified as analysis proceeds:

For an EIS:

> ***The responsible official may modify the proposed action and alternative(s) under consideration prior to issuing a draft EIS. In such cases, the responsible official may consider the incremental changes as alternatives considered. The documentation of these incremental changes to a proposed action or alternatives shall be included or incorporated by reference in accord with 40 CFR 1502.21.***
>
> (36 CFR 220.5(e)(1))

For an EA:

> ***The description of the proposal and alternative(s) may include a brief description of modifications and incremental design features developed through the analysis process to develop the alternatives considered. The documentation of these incremental changes to a proposed action or alternatives may be incorporated by reference in accord with 40 CFR 1502.21.***
>
> (36 CFR 220.7(b)(2)(iii))

Modifications and incremental changes to the alternatives may be considered as part of the range of alternatives. Documentation of these incremental changes must be available in the record. Incorporation by reference in accord with 40 CFR 1502.21 may be used to avoid duplicating the description and analysis in an EIS. In an EA, documentation may include a brief description of modifications and other incremental changes to the proposed action and alternative(s).

**14.4 – Alternatives Not Considered in Detail**

The range of alternatives considered by the responsible official includes all reasonable alternatives to the proposed action that are analyzed in the document, as well as other alternatives eliminated from detailed study. Alternatives not considered in detail may include, but are not limited to, those that fail to meet the purpose and need, are technologically infeasible or illegal, or would result in unreasonable environmental harm.

Note that a potential conflict with local or federal law does not automatically render an alternative unreasonable, although such conflicts must be considered. See the "NEPA's 40 Most Asked Questions," #2b.

Because alternatives eliminated from detailed study are considered part of the range of alternatives, the project or case file should contain descriptions of the alternatives and the